1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11  SASKIA V. W. HILTON, M.D.,              )    Civil No. 02-CV-1080-L(CAB)
                                            )
12            Plaintiff,                     )   **ORDER GRANTING**
                                            )   **DEFENDANTS' MOTION FOR**
13  v.                                       )   **SUMMARY JUDGMENT [doc. #107]**
                                            )   **and DIRECTING ENTRY OF**
14  CHILDREN'S HOSPITAL—SAN                  )   **JUDGMENT**
    DIEGO, *et al.*,                         )
15                                           )
              Defendants.                    )
16  ─────────────────────────               )

17          San Diego Diagnostic Radiology Medical Group, Inc. ("SDDR"), Lee Pinckney, M.D.,

18  Lee Harvey, M.D., Patrick Carey, M.D. and Melvin Senac, M.D. (collectively "defendants")

19  move for summary judgment.  Plaintiff opposes the motion.  Having considered the briefs and

20  evidence submitted, the Court enters the following decision.

21                              **Factual Background**

22          Plaintiff is a pediatric and general radiologist on staff at the University of California, San

23  Diego Medical Center ("UCSD").  Defendant Children's Hospital ("CHSD") is a San Diego

24  hospital dedicated exclusively to pediatric medicine.  Defendant San Diego Diagnostic

25  Radiology Medical Group, Inc. ("SDDR") provides professional radiology services for both

26  adult and pediatric patients.  Defendant Lee Pickney, M.D. is a pediatric radiologist, Chief of

27  Staff at CHSD, and an SDDR shareholder.  Defendant Lee Harvey, M.D. is a pediatric

28  radiologist, Radiology Medical Director at CHSD, and an SDDR shareholder. Defendant Patric

1  Carey, M.D. is a radiologist and President of SDDR.  Defendant Melvin Senac, M.D. is a

2  radiologist and an SDDR shareholder.

3        UCSD decided to decrease the size of its pediatric facility, and as a result, plaintiff

4  applied for staff privileges at CHSD.  On June 28, 2001, CHSD granted plaintiff privileges for

5  general diagnostic radiology, fluoroscopy and neurosonography, but did not grant computerized

6  tomography ("CT") and ultrasound privileges.  Plaintiff alleges that the exclusion of CT and

7  ultrasound privileges "was the professional and economic equivalent of a full denial of radiology

8  staff privileges at [CHSD]."  *Complaint* ¶ 28.  According to plaintiff, difficult cases often require

9  CT and ultrasound scans, and a denial of these privileges prevents a radiologist from being able

10  to evaluate a case through its natural diagnostic progression.  *Id.*

11        In August 2001, plaintiff applied for a modification of her staff privileges in order to

12  obtain CT and ultrasound privileges.  In early November 2001, plaintiff inquired as to the status

13  of her modification application.  She was told that no action had been taken, and she was asked

14  to submit additional documentation demonstrating her competency.  Between mid-November

15  2001 and early February 2002, plaintiff contacted CHSD staff on several occasions to ask about

16  the status of her application, and each time CHSD requested further supporting information to

17  supplement her original application.  On February 6, 2002, CHSD informed plaintiff that her

18  application was complete and that it would soon be rendering a decision regarding her request

19  for CT and ultrasound privileges.  Between February and April 2002, plaintiff repeatedly

20  contacted CHSD to inquire about the status of her application and to ask for a date by which a

21  decision would be made.  On each occasion, CHSD staff informed plaintiff that her application

22  was under review, but would not give a date by which Plaintiff could expect a decision.  On

23  April 11, 2002, after receiving another request for supporting documentation, plaintiff declined

24  to submit further information and demanded that CHSD render a decision on her application.

25  Plaintiff alleges that CHSD's repeated requests for supplemental information for her application,

26  and the delay in reviewing her application once completed, were in bad faith in that these actions

27  were intended to further a horizontal market conspiracy designed to prevent her from competing

28  in the market.

### Procedural Background

On May 16, 2002, plaintiff brought this action in the San Diego County Superior Court. As of that date, CHSD had not reached a decision on Plaintiff's application. On June 20, 2002, CHSD informed plaintiff that it would grant her application for CT and ultrasound privileges. Defendants subsequently removed the action to this Court.

Defendants then sought dismissal of the action arguing that each of plaintiff's claims was barred by the Health Care Quality Improvement Act ("HCQIA").[1]  Specifically, defendants contended that they were immune from liability because HCQIA protects the type of professional peer review activity that defendants undertook in reviewing plaintiff's privileges application. The Court agreed and concluded that CHSD was entitled to immunity from damages liability under HCQIA.  The Court further dismissed defendants Pickney, Harvey, Carey and Senac, because as physicians who participated in or assisted the professional review body with respect to Plaintiff's CT and ultrasound privileges application, they were also shielded from liability.  42 U.S.C. § 11111(a)(1)(D).  Plaintiffs appealed the dismissal to the Ninth Circuit Court of Appeals.

The Ninth Circuit reversed the dismissal finding that the case encompassed more than "straightforward professional review actions."  *Hilton v. Children's Hosp. of San Diego*, 107 Fed. Appx. 731, 733-34 (9th Cir. 2004).  Instead, the Court of Appeals concluded that the Complaint alleged that "the professional review activities were not undertaken in good faith and in the interest of good health care, but as a ruse or cover to obscure a decision already made unlawfully to exclude her from an aspect of her practice. . . . Thus, if Hilton can survive summary judgment and then prove that her treatment stemmed from an illegal Market Division Agreement, not from honest professional peer review, HCQIA immunity would not attach, and Hilton might be entitled to relief."  *Id.*[2]

---

[1]      42 U.S.C. § 11101 *et seq.*

[2]      The Ninth Circuit also noted that "[i]f Hilton fails on summary judgment adequately to raise a genuine issue of material fact regarding her claim, and if it turns out that what befell her did indeed stem from professional review activities, then we conclude that the district court's HCQIA immunity analysis was correct."  107 Fed. Appx. 731, 734 fn.2 (9th Cir. 2004)

After remand from the Ninth Circuit, Hilton filed a First Amended and Supplemental Complaint ("FAC"). (Doc. # 79).  In the FAC, Hilton alleges violation of Sections 1 and 2 of the Sherman Act, and violation of the Cartwright Act against defendant SDDR.  Plaintiff contends that there was a Market Division Agreement whereby SDDR agreed with UCSD that SDDR pediatric radiologists would not practice at UCSD and UCSD pediatric radiologists would not practice at Children's Hospital, (FAC ¶ 21); and a Horizontal Refusal to Deal caused by SDDR's alleged refusal to assist in the treatment of Hilton's patients. (FAC ¶ 24).

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when, under the substantive governing law, it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  When the moving party bears the burden of proof on an issue — whether on a claim for relief or an affirmative defense — the party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party fails to discharge its initial burden of production, summary judgment

must be denied and the court need not consider the nonmoving party's evidence, even if the nonmoving party bears the burden of persuasion at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970); *Nissan Fire*, 210 F.3d at 1102-03. When the moving party carries its initial burden of production, the nonmoving party cannot "rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *Anderson*, 477 U.S. at 256; *Nissan Fire*, 210 F.3d at 1103.

A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When ruling on a summary judgment motion, the court cannot engage in credibility determinations or weighing of the evidence; these are functions for the jury. *Anderson*, 477 U.S. at 255; *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003). The court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

## Discussion

### A.     Sherman Act Section 1 Claim

Section 1 "prohibits conspiracies and agreements that unreasonably restrain trade." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989); 15 U.S.C. § 1. To establish a Section 1 violation under the Sherman Act, a plaintiff must demonstrate three

elements: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged, *i.e.,* an "antitrust injury". *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 811 (9th Cir. 1988); *accord Eichman v. Fotomat Corp.,* 871 F.2d 784 (9th Cir. 1989).   Thus, "[a] section 1 plaintiff must prove an agreement between two or more persons to restrain trade, because unilateral conduct is not illegal under section 1." *Levine v. Central Florida Med. Affiliates, Inc*., 72 F.3d 1538, 1545 (11th Cir. 1996).  But not every agreement that restrains competition violates the Sherman Act; rather, to be unlawful, the agreement must *unreasonably* restrain competition. *McDaniel v. Appraisal Inst.*, 117 F.3d 421, 422 (9th Cir. 1997); *Thurman Indus.*, 875 F.2d at 1373; *Levine*, 72 F.3d 1545.  The unreasonableness of the agreement is analyzed under either a *per se* rule of illegality or a rule of reason analysis. *McDaniel*, 117 F.3d at 422; *Thurman Indus.*, 875 F.2d at 1373.   The *per se* rule applies only where the practice at issue "'facially appears to be one that would always or almost always tend to restrict competition and decrease output.'" *D.A. Rickards, M.A. v. Canine Eye Registration Fndn.*, 783 F.2d 1329, 1332 (9th Cir. 1986) (*quoting National Collegiate Athletic Ass'n v. Board of Regents of Univ. of Oklahoma*, 468 U.S. 85, 100 (1984)); *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1091 (9th Cir. 2000).  "*Per se* violations are 'naked restraints of trade with no purpose except stifling of competition,' and have been characterized as so 'plainly anti-competitive' and lacking 'any redeeming virtue' that they are presumed illegal under § 1.'" *United States v. Andreas*, 216 F.3d 645, 666 (7th Cir.) (internal citation omitted), *cert. denied*, 513 U.S. 1014 (2000); *see National Collegiate*, 468 U.S. at 100 (holding that a practice that facially appears to restrict competition "is presumed unreasonable without inquiry into the particular market context in which it is found.").  Some practices, such as horizontal price-fixing, are subject to a *per se* analysis. *National Collegiate*, 468 U.S. at 101 & n.21.

Agreements that are not presumed unreasonable under the *per se* category are analyzed under the "rule of reason" test. *Levine*, 72 F.3d at 1546.  Under a rule of reason analysis, the plaintiff must show: "'(1) an agreement or conspiracy among two or more persons or distinct

1   business entities; (2) by which the persons or entities intend to harm or restrain competition; and

2   (3) which actually restrains competition.'" *Thurman Indus.*, 875 F.2d at 1373 (*quoting Oltz v. St.*

3   *Peter's Community Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988)); *Austin v. McNamara*, 979 F.2d

4   728, 738 (9th Cir. 1992).  "An essential element of a Section 1 violation under the rule of reason

5   is injury to competition in the relevant market."  *Alliance Shippers, Inc. v. Southern Pac. Transp.*

6   *Co.*, 858 F.2d 567, 570 (9th Cir. 1988).  Accordingly, the antitrust violation must harm

7   competition, not just competitors.  *McGlinchy*, 845 F.2d at 811-12.

8          Here, plaintiff alleges a horizontal market division as being in violation of Section 1.  A

9   horizontal market division is an agreement "in which competitors at the same level agree to

10  divide up the market for a given product."  *Metro Indust., Inc. v. Sammi Corp.,* 82 F.3d 839, 844

11  (9th Cir. 1996).   Plaintiff contends that there has been a Market Division Agreement between

12  SDDR and UCSD dating from 1990, that would keep pediatric radiologists, specifically plaintiff,

13  from UCSD from practicing at CHSD for economic reasons.  Plaintiff points to a September 20,

14  2000 Memorandum written by Lee Pinckney which provides: "[I]n 1990, our representatives

15  (including myself) met with UCSD Radiologists (including department Chair, George Leopold)

16  to form an amalgamation agreement which was subsequently implemented. . . . 6.  UCSD

17  Radiologists would not move their clinical practices to CHSD, nor would SDDR radiologists

18  practice at UCSD (in view of the limited number of examinations moving to CHSD and with the

19  NICU remaining at UCSD)."  (Exh. 53, SDDR 373-374).

20         Pinckney, in his deposition testimony, stated he received a facsimile from Dr. Radke of

21  UCSD on February 28, 2001, that included a one-page revision of the draft SDDR-UCSD

22  Agreement which contained the following: "UCSD Radiologists would not move their clinical

23  practices to CHSD, nor would SDDR Radiologists practice at UCSD (in view of the limited

24  number of examinations moving to CHSD, and with the NICU remaining at UCSD).  However,

25  if in the future, UCSD would have no/inadequate Pediatric Radiologist faculty to cover the

26  NICU and Pediatric cases from the Burn Unit, SDDR will provide clinical services to UCSD and

27  bill and collect for those professional services." (Exh. 54, SDDR 375-76).

28         Given this evidence of an agreement between SDDR and UCSD to prevent UCSD

1  pediatric radiologists, including Hilton, from working at Children's Hospital, a trier of fact could

2  find that economic motives rather than professional standards were SDDR's purpose in allegedly

3  delaying plaintiff's attempt to be granted privileges at CHSD and attempting to exclude Hilton

4  from practicing at CHSD.

5       Defendants contend, however, that even if there was an agreement, plaintiff has not

6  shown injury to competition, a defining element of an antitrust violation.  As noted above, a

7  plaintiff must establish antitrust injury, *i.e.,* that the conduct at issue actually caused "injury to

8  competition, beyond the impact on the claimant, within a field of commerce in which the

9  claimant is engaged." *Austin v. McNamara*, 979 F.2d 728, 738 (9th Cir. 1992).  In the absence

10 of a showing that the market as a whole has been affected, the fact that one competitor must

11 practice elsewhere is not an antitrust injury. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466

12 U.S. 2, 31 (1984)(abrogated on other grounds by *Illinois Tool Works, Inc. V. Independent Ink,*

13 *Inc.*, 126 S. Ct. 1281 (2006).  Plaintiff must demonstrate with evidence that defendants caused an

14 actual "injury to competition, beyond the impact on the [plaintiff]," within a particular

15 geographic and product market. *Austin*, 979 F.2d at 738,

16      Here, plaintiff has failed to come forward with evidence showing that other pediatric

17 radiologists have been excluded from the marketplace or that patients are unable to find

18 alternatives to the defendants for their radiological needs, or that plaintiff is incapable of

19 competing in the relevant market or that there is a diminishment in the quality of care or that

20 there is an anti-competitive increase in the price of pediatric radiology.  Instead, plaintiff asks

21 the Court to speculate about a potential antitrust injury: "[T]his Court must ask itself if Hilton

22 fails here, what will be the impact of SDDR's continuing efforts to maintain its monopoly on

23 'other participants and potential participants' in the market from which Hilton has been

24 excluded?"  (Responsive Memo at 19).

25      In order to survive a summary judgment motion, the nonmoving party must come forward

26 with evidence sufficient to establish the existence of any elements that are essential to that

27 party's case, and for which that party will bear the burden of proof at trial. *See Celotex*, 477

28 U.S. at 322.  Because of the absence of evidence of an antitrust injury, summary judgment in

1    defendants' favor is required.

2         **B.    Sherman Act Section 2 Claim**

3         Under Section 2, the three requisite elements of a monopolization claim are:  1)

4    possession of monopoly power in the relevant market; 2) willful acquisition or maintenance of

5    that power; and 3) causal "antitrust" injury.  *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627

6    F.2d 919, 924 (9th Cir. 1980)(*cert. denied,* 450 U.S. 921 (1981)).  The principle established in

7    *United States v. Colgate & Co.*, 250 U.S. 300, 39 S. Ct. 465(1919), that a businessman is

8    allowed, absent a monopolistic purpose, to deal with any supplier or customer he or she chooses,

9    retains its vitality.  Mere refusal to deal, without an agreement or conspiracy, is not a violation of

10   the antitrust laws.  *Dahl, Inc. v. Roy Cooper Co., Inc.*, 448 F.2d 17 (9th Cir. 1971).

11        In the present case, plaintiff alleges a violation of Section 2 of the Sherman Act as a

12   Horizontal Refusal to Deal based on SDDR's alleged "refus[al] to provide medical services to

13   any patient at CHSD who has elected to deal with HILTON" (FAC ¶24), and refusal to provide

14   consulting services to HILTON and patients who have elected to deal with Hilton in radiology

15   modalities outside of HILTON's areas of expertise.  (FAC ¶24(b)).

16        But like plaintiff's Section 1 claim, there is no evidentiary basis to support a finding that

17   defendants' acts constituted a "causal antitrust injury," a necessary element of a Section 2 claim.

18   Plaintiff has failed to come forward with evidence showing any injury to competition, and

19   accordingly, there is no cognizable antitrust injury.  *See McGlinchy v. Shell Chemical Co.*, 845

20   F.2d 802, 811 (9th Cir. 1988); *accord Eichman v. Fotomat Corp.,* 871 F2d 784 (9th Cir. 1989).

21   Accordingly, defendants are entitled to summary judgment on plaintiff's Section 2 claim because

22   plaintiff has failed to come forward with any evidence demonstrating an antitrust injury.

23   . . .

24   . . .

25   . . .

26   . . .

27   . . .

28   . . .

02cv1080

**Conclusion**

In the context of this summary judgment motion, plaintiff has failed to come forward with evidence to establish the existence of an element that is essential to her case, and for which she will bear the burden of proof at trial – an antitrust injury.  Because of the lack of evidence concerning an antitrust injury, plaintiff has not raised a disputed material issue of fact sufficient to withstand defendants' summary judgment motion.  Based on the foregoing,  **IT IS ORDERED** granting defendants' motion for summary judgment.  **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment in accordance with this Order.

**IT IS SO ORDERED.**


DATED:  March 7, 2007

_____
M. James Lorenz
United States District Court Judge


COPY TO:

HON. CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE


ALL COUNSEL/PARTIES

02cv1080